IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL DWANE GOLDEN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:14-CV-0663-WKW |
| ) | (WO) |
| CITY OF MONTGOMERY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the Defendants' motion to dismiss. (Doc. 22). Having considered the motion, the court concludes that the motion is due to be denied in part and granted in part.

## I. Standard of Review

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing

the sufficiency of plaintiff's allegations. *Id.*; see also *Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See *Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

In *Iqbal*, the Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere

possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 556 U.S. at 570.

## II.   Facts

Michael Dwayne Golden and his wife, Cathleen Elizabeth Golden, have filed an amended complaint against the City of Montgomery, Montgomery Mayor Todd Strange, Montgomery Public Safety Director J. Christopher Murphy, Montgomery Police Chief Kevin Murphy, and Montgomery Police Officers James E. Ramson and Joel Edward Roberson. (Doc. 21). The following are the salient factual allegations of the amended complaint:

> 11. On the day of this incident,[1] the plaintiff was returning from a quarterly meeting of the Alabama Council of the Military Officers Association of America (MOAA) at Maxwell AFB. While heading northbound on 1-85 at approximately 3:34 pm (CST), he noticed an unmarked vehicle displaying flashing blue lights. The plaintiff immediately called 911 to let the proper authorities know that there was an unmarked SUV with a brush guard behind him flashing blue lights. Furthermore, the plaintiff informed the emergency operator of his location and direction of travel and that the plaintiff was proceeding to the next safe exit (Exit 16—Waugh/Cecil).
>
> 12. While traveling to a safe exit, the plaintiff was menaced by the unmarked vehicle. Officer Ramson, the driver of the SUV, would speed up, slow down, ride his bumper, tried to force him to of the interstate, and displayed aggressive and unwarranted behavior. Nevertheless, the

---

[1] July 10, 2012.

3

plaintiff continued to Exit 16 with his flashers on and at a safe speed.

13. As the plaintiff was trying to exit the interstate at Exit 16, Officer Ramson again tried force him off the road. My next call to 911 occurred at this time. The plaintiff told the emergency operator that the black SUV was trying to force him off the road. Once the plaintiff reached the stop sign at the end of the exit, the plaintiff tried to proceed to the BP gas station off of Old Atlanta Highway; however, Officer Ransom initiated unwarranted and hostile actions to prevent him from reaching the BP gas station.

14. When the plaintiff finally reached the parking area of the BP gas station the plaintiff initiated another call to *911*. By this time, Officer Ramson had reached his vehicle with his weapon drawn. Once he realized the plaintiff was not a threat, he re-holstered his weapon and retrieved his night stick. While the plaintiff was on the phone with *911*, Officer Ramson beat the driver's side back door with his night stick and pull so hard on the door handle that he broke it. The plaintiff tried desperately to get assistance from the emergency operator, but his efforts were in vain. Approximately one minute after Officer Ramson exited his vehicle (3:39 pm CST), he busted the driver's window with his night stick and tried to remove him from the vehicle while the plaintiff was still restrained by his seatbelt.

15. For several minutes Officer Ramson tried to pull him out of his vehicle with his left wrist and cuffed and while still restrained by the seatbelt. At approximately 3:45 pm (CST), Officer Roberson arrived on the scene. Initially, he tried to assist Officer Ramson with pulling him out of the vehicle while hand cuffed and strapped in. He then proceeded to the passenger's side and used his night stick to push the plaintiff out the driver's side. This event is extremely important because of a brain tumor which was removed in 1988, the plaintiff has an open cranium at the right base of his skull, slightly smaller than a tennis ball. Because there is nothing protecting his brain, a blow to this area can be fatal. During this period Officer Ramson realized that the plaintiff was still strapped in and disengaged the seatbelt. From the moment Officer Roberson started using his night stick to push him out the vehicle, the

4

plaintiff started protecting his skull area. His focus shifted to protecting his life versus hoping for assistance from a State Trooper, another law enforcement agency or 911.

16. Once the plaintiff had been removed from his vehicle, three Montgomery officers, shoved him to the ground causing contusions to his legs and arms and tears in his clothing. After the plaintiff was handcuffed and because of the plaintiff was having difficulty in breathing, the presence other medical conditions, and visible blood, the plaintiff was transported by Haynes Ambulance of Alabama, Inc. to Baptist Medical Center East for treatment and evaluation.

(Doc. # 21)

Pursuant to 42 U.S.C. § 1983, the Goldens allege a claim against all of the defendants for deprivation of constitutional rights on the basis of false arrest and excessive use of force. (Doc. 21 pp. 5-6 ¶¶ 25-27). The Goldens also allege tort claims against all of the defendants for negligence and wantonness, false imprisonment, assault and battery, and loss of consortium. (Doc. 21 pp. 4-5, ¶¶ 18-24; Doc. 21 p. 7 ¶ 5). The Goldens seek compensatory and punitive damages. (Doc. 21 pp. 7-8).

### III.  Analysis

**A.    Claims Against the City of Montgomery**

    **1.    Section 1983 Claims Against the City of Montgomery**

The City of Montgomery argues that the court should dismiss the constitutional claims asserted against it pursuant to 42 U.S.C. § 1983 because "[m]unicipalities may

5

only be held liable under [§] 1983 if action pursuant to official municipal policy of some nature caused a constitutional tort." *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (citations and internal quotation marks omitted).

However, the Goldens specifically assert in their *pro se* complaint that the alleged excessive force and false arrest were the result of the City of Montgomery's policy of failing to train its officers in the use of proper safety procedures and the proper use of police authority. (Doc. 21 ¶ 27). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Montgomery's city policymakers can be certain that municipal police officers in unmarked vehicles will from time to time stop and arrest citizens who are traveling on the roads. Thus, it can be said that the need to train the officers in how to safely effectuate those procedures within the bounds of police authority is so obvious that failure to provide that training could properly be characterized as deliberate indifference to constitutional rights. *See id.* at 390 n.10 ("[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly

force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.").

Therefore, at this stage of the pleadings, the motion to dismiss is due to be denied with respect to the Goldens' § 1983 claims against the City of Montgomery.

### 2. State Law Claims Against the City of Montgomery

The City of Montgomery has not moved to dismiss the state law claims asserted against it. Accordingly, at this time, the court will not consider whether the Goldens' state law claims against the City of Montgomery are due to be dismissed.

### B. Official Capacity Claims Against the Individual Defendants

The Goldens have not specifically stated whether they are attempting to sue Montgomery Mayor Todd Strange, Montgomery Public Safety Director J. Christopher Murphy, Montgomery Police Chief Kevin Murphy, and Montgomery Police Officers James E. Ramson and Joel Edward Roberson (collectively, "the individual defendants") in their official capacities. However, in light of the court's duty to construe a *pro se* complaint liberally, the court notes that, to the extent that the Goldens *may* be attempting to sue the individual defendants in their official capacities as agents or officers of the City of Montgomery, those claims are duplicative of their claims against the City of Montgomery.

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n.55 (1978)). Where, as here, "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991); *see also Dickinson v. City of Huntsville*, 822 So.2d 411, 415 (Ala. 2001) (panel decision) (holding, in a case involving claims of fraud, fraudulent misrepresentation, negligent supervision and hiring, negligence, and wantonness, that the mayor of Huntsville, Alabama, "is, in her official capacity, within the line and scope of her office, the agent of the City, through whom the City acts. Thus, to sue the mayor in her official capacity is simply another way of suing the City.").

As explained in Part III.A. of this Report and Recommendation, the motion to dismiss the Goldens' § 1983 claims against the City of Montgomery is due to be denied at this time, and the case will also proceed on all state law claims against the

City of Montgomery. Accordingly, all claims against the individual defendants in their official capacities are due to be dismissed as duplicative of the claims against the City of Montgomery.

## C. Personal Capacity § 1983 Claims Against the Individual Defendants

The individual defendants argue that qualified immunity shields them from personal liability for the Goldens' § 1983 claims. Qualified immunity shields government officials performing discretionary functions from suits in their individual capacities unless their conduct violated clearly established statutory or constitutional rights. *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007). "This Circuit generally follows a two-step analysis to determine if qualified immunity applies to any [§] 1983 claim." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010). First, the court determines whether the defendant's conduct amounted to a constitutional violation; second, the court will analyze whether the right violated was "clearly established" at the time of the violation. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (reaffirming the validity of the two-step procedure, while noting that the judges of the district courts and the courts of appeals are in the best position to determine the most efficient order of applying the two steps).

    **1.    Personal Capacity § 1983 Claims Against Officer Ramson and Officer Roberson**

According to the allegations of the complaint,[2] Michael Golden was attempting to cooperate and offering no resistance except to verify that the driver of the unmarked vehicle was a law enforcement officer, was proceeding to a safe location, and was attempting to shield himself from injury. Officer Ramson, later joined by Officer Roberson, beat on Michael Golden's car, broke his vehicle window and tried to pull and push him from his vehicle while his seatbelt was buckled. They then removed him from his vehicle, pushed him to the ground, and arrested him without any cause using force severe enough to cause injuries that required immediate medical treatment.

The law is clearly established that "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). "In order to be entitled to qualified immunity from a Fourth Amendment claim [for false arrest], an officer need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have

---

[2]In ruling on a qualified immunity claim at the motion-to-dismiss stage, the court must take all of the factual allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). In this case, accepting the allegations of the complaint as true, the Officer Ramson and Officer Roberson ("the arresting officers") had no cause at all to arrest Golden. Therefore, at this stage of the proceedings, the court is unable to conclude as a matter of law that qualified immunity requires dismissal of Michael Golden's § 1983 false arrest claim against the arresting officers in their personal capacities.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). A police officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," but the Fourth Amendment is violated when the use of force is objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). To determine whether the force was objectively reasonable under the circumstances, the court must consider the following five factors from the perspective of a reasonable officer on the scene: the severity of the crime, whether the suspect poses an immediate threat to safety, whether the suspect is actively resisting or attempting to evade arrest, the need for the application of force, and the relationship between the need and amount of force used. *Mobley v. Palm Beach County Sheriff Dep't*, 783

F.3d 1347, 1355 (11th Cir. April 15, 2015).  In this case, a reasonable officer faced with the facts as alleged in the complaint would have perceived that Golden had committed no crime (other than a traffic violation), that Golden was offering no resistance and was not a safety threat, and that there was no need to engage Golden with any physical force, much less the amount of force that was actually used.  Thus, taken in the light most favorable to the Goldens, the facts alleged in the complaint are sufficient to support the conclusion that arresting officers' use of force was unreasonable.

However, even if the arresting officers violated Michael Golden's constitutional rights by applying unreasonable force, qualified immunity nevertheless protects them from suit unless they violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Kesinger v. Herrington*, 381 F.3d 1243, 1250 (11th Cir. 2004) ("[B]efore qualified immunity is surrendered by an officer, he or she is entitled to fair and clear warning that the challenged conduct violates federally protected rights.").  A constitutional right is clearly established where previously-existing, materially-similar cases have already shown that what the police officer was doing was wrong, or where the officer's conduct lies so obviously at the core of what the Fourth Amendment prohibits that the unlawfulness of the conduct is so readily

12

apparent, regardless of the existence of similar case law, that every reasonable officer in the same position would conclude that the conduct was unconstitutional. *Lee v. Ferraro*, 284 F.3d 1188, 1198-99 (11th Cir. 2002).

Golden was not resisting arrest and, if his allegations are true, no reasonable officer could have concluded that there was a need for the application of *any* force, much less any need to attempt to pry Golden from his vehicle with his seat belt attached and them push him to the ground with enough force to cause bleeding and other injuries that required immediate medical treatment. Existing case law clearly places officers on notice that it is not constitutionally permissible to use gratuituous force to effectuate an arrest against a cooperative citizen who is not attempting to flee or resist arrest and is compliant, subdued, and poses no threat to the officers or members of the public. *See*, *e.g.*, *Saunders v. Duke*, 766 F.3d 1262, 1264 (11th Cir. 2014) (citing cases decided prior to July 10, 2012, the date of the incident at issue in this case, to hold that slamming a cooperative arrestee's head against the ground during an arrest, causing him to bleed, was a clearly established constitutional violation; "[w]e have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands")); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases

hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) ("Under [the] plaintiff's allegations, [the arresting officer] pushed her against a soda machine, handcuffed her, and dragged her to the police car. There is no evidence in the record to suggest that plaintiff posed a danger to the officer or others. Accordingly, because of the absence of any justification for [the officer']s use of force, application of the Fourth Amendment reasonableness standard 'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)."); *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) ("Neither Thornton nor Cravey was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest. Yet, on the facts viewed in the light most favorable to the plaintiffs, the officers used force in arresting both Thornton and Cravey. The officers grabbed Thornton and wrestled him to the ground, and threw Cravey on the hood of one of the patrol cars before handcuffing him. Under the circumstances, the officers were not justified in using any force, and a reasonable officer thus would have recognized that the force used was excessive.").

 Because the facts as alleged in the complaint reasonably support the conclusion that Officer Ramson and Officer Robison violated Michael Golden's clearly

established constitutional rights by arresting him without arguable probable cause while using excessive force, the court concludes that, at this stage of the proceedings, qualified immunity does not entitle Officer Ramson and Officer Roberson to the dismissal of Michael Golden's § 1983 claims against them in their personal capacities.

  **2. Personal Capacity § 1983 Claims Against Mayor Todd Strange, Public Safety Director J. Christopher Murphy, and Montgomery Police Chief Kevin Murphy**

 In § 1983 actions, a supervisor's liability for a constitutional violation must be based on something more than a theory of respondeat superior. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). A supervisor's conduct can amount to an actionable constitutional violation under § 1983 if the supervisor personally participated in the alleged unconstitutional conduct or if there was a causal connection between the supervisor's actions and the alleged constitutional deprivation. *Id*. The complaint contains no allegation of any fact that would reasonably support the conclusion that Mayor Todd Strange, Public Safety Director J. Christopher Murphy, and Montgomery Police Chief Kevin Murphy ("the supervisory defendants") were personally involved in any of the conduct made the basis of the § 1983 claims or that any act or decision by any of them personally caused the alleged constitutional violation. Because the complaint does not allege

that the supervisory defendants personally committed or caused any constitutional violation, they are protected by qualified immunity and are entitled to dismissal of the § 1983 claims against them in their individual capacities.

**D.     Personal Capacity State Law Claims Against the Individual Defendants**

The Goldens assert claims of negligence and wantonness in effectuating the arrest, false imprisonment, assault and battery, and loss of consortium against all of the individual defendants in their personal capacities. The individual defendants argue that these claims are due to be dismissed pursuant to the discretionary-function and state-agent immunity afforded by Ala. Code 1975 § 6-5-338 and *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000).

Under Ala. Code 1975 § 6-5-338 and *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), an officer of the state, including a municipal peace officer, is immune from civil liability in his or her personal capacity when the officer is sued for conduct based on his exercise of judgment in enforcement of the criminal laws of the State, including, but not limited to arresting or attempting to arrest persons, or when carrying out the discretionary functions of a peace officer under circumstances entitling peace officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975. However, state agent immunity under *Cranman* does not afford immunity from suit for acts committed willfully, maliciously, fraudulently, in bad faith, beyond an

16

officer's authority, or under a mistaken interpretation of the law. *Cranman*, 792 So. 2d at 405. Further, the discretionary function immunity provided to peace officers pursuant Ala. Code 1975 § 6-5-338 does not afford immunity for acts done maliciously or in bad faith. *Ex parte City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005).

The factual allegations of the complaint, viewed in the light most favorable to the Goldens, are sufficient to reasonably support the conclusion that the defendants committed the allegedly tortious conduct willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.[3]

---

[3]The Goldens do allege a claim for negligence, a cause of action which does not include require proof of an element of willfulness, bad faith, or malicious intent. However, viewing the factual allegations of the *pro se* complaint in the light most favorable to the Goldens, it appears that the negligence claim is likely to involve proof that one or more of the individual defendants failed to discharge his duties pursuant to detailed rules and regulations or acted beyond his authority or under a mistaken interpretation of the law. *See Cranman*, 792 So. 2d at 405. *Cf. Ex parte Bitel*, 45 So. 3d 1252, 1258-59 (Ala. 2010) ("When the complaint is viewed most strongly in Sanders's favor, it is conceivable that she could prove facts that would show that the [arresting officers'] supervisors failed to discharge duties pursuant to specific departmental rules or regulations. If so, Sanders may possibly prevail on her claims. Accordingly, the trial court properly denied the supervisors' motion to dismiss the claims stated against them in their individual capacities"); *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000) ("At first blush, it appears that some claims . . . are due to be dismissed, pursuant to the *Cranman* test. However, if any employee failed to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist, or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law, then it is possible that that employee would not be entitled to State-agent immunity. . . . It is conceivable that the [plaintiffs] could prove facts that would show that one or more of the employees failed to discharge duties pursuant to a checklist or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. If so, the families 'may possibly prevail' on their claims. Therefore, the trial court properly denied the employees' motion to dismiss the claims stated against them in their individual capacities.").

Moreover, the court notes that the defendants have not addressed whether discretionary function immunity provided by § 6-5-338 applies any differently to the negligence claim than to the other claims. In addition, they have not addressed the legal basis upon which the Mayor of the City of Montgomery, in his personal capacity, may be deemed either an officer of the state or a peace officer entitled to discretionary

17

Accordingly, at this time, the motion to dismiss the state law claims against the individual defendants in their personal capacities on the basis of state agent immunity and discretionary function immunity is due to be denied.

### IV.   Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge

1. that, with respect to the Goldens' § 1983 claims against the City of Montgomery, that the motion to dismiss be **denied**;

2. that all claims against the individual defendants in their official capacities be **dismissed** as duplicative of the claims against the City of Montgomery;

3. that with respect to the Goldens' § 1983 claims against Officer Ramson and Officer Roberson in their personal capacities, that the motion to dismiss be **denied**;

4. that, with respect to the Goldens' § 1983 claims against Mayor Todd Strange, Public Safety Director J. Christopher Murphy, and Montgomery Police Chief Kevin Murphy in their personal capacities, that the motion

---

function immunity pursuant to § 6-5-338.
    Accordingly, at this stage of the proceedings, and in light of the defendants' failure to raise the specific issue, the court will not separately consider whether, as a matter of law, one or more of the individual defendants is immune from the negligence claim on the basis of state-agent immunity and/or the discretionary function immunity afforded to peace officers pursuant to § 6-5-338.

      to dismiss be **granted**;

4.    that, with respect to the Goldens' state law claims against the individual defendants in their personal capacities, that the motion to dismiss be **denied**; and

5.    that this case be referred back to the Magistrate Judge for further proceedings on the following claims: the Goldens' § 1983 and state law claims against the City of Montgomery, the Goldens' § 1983 claims against Officer Ramson and Officer Roberson in their personal capacities, and the Goldens' state law claims against all individual defendants in their personal capacities.

It is further

**ORDERED** that the parties shall file any objections to the said Recommendation on or before **July 15, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by

the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

**The plaintiffs are again specifically advised that they are required to comply with the orders of this court and that, regardless of whether they are able to retain counsel, the court will move this case forward even if they must proceed** *pro se***.**

Done this 1st day of July, 2015.

                              /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE